AMERICAN PASTORAL CO., Limited, v. GURNEY.

(Circuit Court, W. D. Missouri, W. D.   April 23, 1894.)

1. FOREIGN CORPORATIONS—CALLS FOR UNPAID STOCK—FOREIGN LAWS.
    The validity of calls made by a British corporation for unpaid stock is to be determined by the British law.

2. SAME—VALIDITY OF CALLS.
    The articles of association of a British corporation authorized the directors, on 20 days' notice, to make calls for unpaid stock, and further stated that each member should be liable to pay the amount of the calls to the persons, and at the times and places appointed by the directors. *Held*, that the naming of such person, time, and place in the resolution adopted by the board of directors was not a prerequisite to the validity of a call, and such omission did not affect the liability of a member to pay the same.

3. SAME—INTEREST ON UNPAID CALLS.
    The articles of association of a British corporation provided that, if any member did not pay calls for unpaid stock on or before the day fixed therefor, he should be liable for interest from that day at such rate as the directors might from time to time appoint by notice to the defaulter. *Held*, that a defaulter to whom no notice was sent of any resolution requiring payment of interest was not liable for any interest.

This was an action by the American Pastoral Company, Limited, against David E. Gurney, a shareholder therein, to recover an assessment for unpaid stock. The case was tried to the court without a jury.

The above cause, by stipulation duly filed, having been submitted to the court without a jury, the court finds the facts to be as follows: (1) The American Pastoral Company, Limited, the plaintiff herein, was, when this action was commenced, a corporation created and organized in accordance with and under the laws of the kingdom of Great Britain and Ireland, and the defendant, David E. Gurney, was a citizen of the state of Missouri, and a resident of the western district thereof. (2) The plaintiff corporation was created and organized in April, 1884, in the city of London, England, for the purpose, among others, of acquiring and improving lands in the state of Texas, and elsewhere in the United States, and to breed and deal in all kinds of stock, cattle, horses, sheep, and produce. The capital stock was originally fixed at £300,000, divided into 30,000 shares of £10 each, but was increased January 27, 1885, to £400,000, and February 10, 1887 to £450,000, and on the 10th day of February, 1890, the capital stock was reduced from £450,000 to £290,000. The articles of association adopted in the organization of the corporation, and the action of the directors in increasing and reducing the capital stock, are found in pamphlet marked "H" attached to the depositions, and the same is made part of this finding. (3) That on or about July 29, 1884, there was allotted to David J. Beals, of the capital stock of said plaintiff corporation, 2,000 shares, on which was paid at the time by said Beals the sum of £5 per share, said shares being

numbered from 28,001 to 30,000, inclusive. (4) That on or about March 23, 1887, the said David J. Beals duly sold, assigned, and transferred to the defendant 106 shares of capital stock by him owned in said plaintiff corporation, and on or about October 25, 1887, said Beals sold and transferred to defendant 277 shares of said stock, on which said shares there then was unpaid and subject to call the sum of £5 per share. Said 383 shares so sold to defendant were duly transferred to him upon the books of the plaintiff corporation. (5) That on the 14th day of October, 1889, the plaintiff corporation, through its board of directors, made an assessment or call on the unpaid capital stock of the company of £1. 10s. per share, payable on or before the 2d day of December, 1889, and on the 15th of April, 1890, a further call of £1 per share was made, payable on or before the 7th day of June, 1890, and on the 17th day of March, 1891, a further call of 10s. per share was made, payable on or before the 1st day of June, 1891, and on the 4th day of November, 1891, a further call of 10s. per share was made, payable on or before December 5, 1891; the resolutions making such calls being in the following form, and being duly entered upon the minutes of the meetings of the directors of the plaintiff corporation: "To meet the liabilities of the company, including the debentures maturing at 31st of December, 1889, which it was resolved to pay off, it was resolved that a call of one pound ten shillings per share be and is hereby made payable on 2d December, 1889, and the secretary was instructed to send notice of the same to shareholders." The resolutions authorizing further calls, as above stated, are in the same form, differing only in the amount of the assessment and the times of payment. (6) The secretary of the plaintiff corporation forwarded by mail notices of these several calls as they were made, duly addressed, and postage paid, to the defendant; the notices containing a statement of the fact of the call having been made, of the amount thereof, of the time of payment, and the further statement that the amount was payable at the Royal Bank of Scotland, 123 Bishopsgate street, London, E. C., or at any branch of said bank. (7) That when said several calls were made, as above stated, the defendant was the owner of 383 shares of the capital stock of said company, and so appeared upon the stock books of the plaintiff corporation. (8) That the defendant has not paid either one of said calls, made as above stated, nor any part thereof. (9) That the call made on October 14, 1889, of £1. 10s., amounted, on the 383 shares owned by the defendant, to the sum of £574. 10s., or to the sum of $2,792.07, counting the pound to be of the value of $4.86 United States currency; that the call made April 15, 1890, of £1 per share, amounted to £383 on the shares owned by defendant, or to the sum of $1,861.38 United States currency; that the call made March 17, 1891, of 10s. per share, amounted to £191. 10s. on the shares owned by defendant, or to the sum of $930.67 United States currency; that the call made November 14, 1891, of 10s. per share, amounted to the sum of £191. 10s. on the shares owned by the defendant, or to the sum of $930.69 United States currency,—or, in the aggregate, to the sum of $6,514.83. (10) Under date of April 24, 1890, the defendant, in response to a letter written him by the secretary of the plaintiff company, wrote to the secretary that he was not disposed to respond to any calls on account of stock; that he thought there had been bad management of the affairs of the company, and that, if he was pressed for the payment of calls, he would seek to have a receiver appointed to take charge of the corporate property.

Warner, Dean, Gibson & McLeod, for plaintiff.
Gage, Ladd & Small, for defendant.

SHIRAS, District Judge. The defendant in this case resists the collection of the calls made upon the shares of stock by him owned in the plaintiff corporation, on the ground that the several calls are invalid for the reason that the resolutions adopted by the board of directors fail to name the persons and place to whom and at which payment of the calls was to be made. I concur in the position of defendant's counsel that the validity of the calls is to be

determined by the law of Great Britain, for certainly, if the calls made in London under the provisions of the charter of the plaintiff company are invalid and nonenforceable as against stockholders residing in Great Britain, they should not be held to be valid and enforceable against stockholders residing in the United States.

Section 11 of the articles of association of the plaintiff company provides that:

"The directors may, from time to time, make such calls upon the members, in respect of moneys unpaid, or not credited as paid, on their shares, as they think fit, but twenty days' notice at the least shall be given of each call; and each member shall be liable to pay the amount of calls so made to the persons and at the times and places appointed by the directors."

The resolutions adopted from time to time by the directors of an association must be read in connection with the provisions of the articles of association in determining the meaning and validity thereof. Under the provisions of section 11, just cited, the directors unquestionably have the authority to make calls for the unpaid portions of the capital stock when the needs of the company require it. The resolutions adopted by the directors from time to time show that the directors deemed that need existed for making the calls, and they fix in each instance the amount of the call, and the time when the same should become due and payable. Is anything further needed to constitute a valid call upon the stockholders, so far as the action of the directors is concerned? Looking for guidance to the rulings of the courts of England upon the proposition, we find that in Railway Co. v. Woodcock, 7 Mees. & W. 574, under the provisions of a railway act which authorized the directors to make calls from time to time as they deemed it necessary, of which calls 21 days' notice was to be given by newspaper publication, it being further provided that the shareholders were required to pay the calls on their shares to such person, at such time and place, and in such manner as the directors should direct or appoint, it appeared that the directors adopted a resolution for a call, giving the amount of the call and naming the day of payment, but not stating where, or the person to whom, payment was to be made, but these were named in the newspaper advertisement, and it was held that the call was valid and enforceable. In substance, the same ruling was made in Railway Co. v. Fairclough, 3 Scott, N. R. 68. In Stone v. City & County Bank, 3 C. P. Div. 282, wherein it appeared that by the articles of association shareholders were required to pay calls to the person and at the time and place appointed by the directors, and that the directors had made a call payable in installments upon certain dates, but without naming the person to whom, or the place at which, payment was to be made, it was held that, after the company had gone into liquidation, the liquidator, after giving notice of the previous call and the place of payment, could enforce the call against the stockholders. In other words, the call made by the directors was held valid and enforceable, although the resolution did not name the place or person at which and to whom payment was to be made. In Cook on Stock and Stockholders, section 115, after consideration of both the English and American authorities, the

rule is stated to be that "the call need not indicate when or to whom or where payment is required to be made. These are to be stated in the notice of the call."

In support of the contention of the defendant, citation is made of the cases of In re Cawley, 42 Ch. Div. 209, and Johnson v. Iron Agency, 5 Ch. Div. 687. Although there are statements in a portion of the opinions which, by themselves, would seem to mean that a call should name the place of payment, I think the stress of the cases turned upon the proposition that the call should embrace the amount and the time of payment, and that it was not intended to question the correctness of the rulings in the previous cases to the effect that a resolution adopted by the directors, which fixed the amount of the assessment and the time of payment, constituted a valid call under the provisions of articles of association like those of the plaintiff company. Under these articles, it seems clear to me that when the directors, being duly convened, determined that there was need for making an assessment upon the unpaid portions of the shares of the company, and fixed the amount of the assessment and the time for the payment thereof, they did all that was necessary to constitute a valid call. A valid call having thus been made, then, under the provisions of article 11, 20 days' notice thereof must be given to each shareholder. It is not required, however, that this notice should be given by the directors. It is clearly sufficient if the notice is sent by the secretary of the company, as was done in regard to each one of the calls in question. The call having been made in due form by the directors, and notice thereof having been sent to the shareholders, then, under the provisions of article 11, a duty is imposed upon the shareholders, and that duty is to pay the amount of the assessment.

Under the provisions of this article, the directors have the power to appoint the place of payment and the person to whom payment may be made. In the case of an association organized in England, but transacting business in the United States, and having stockholders residing in both countries, it might be deemed advantageous to appoint more than one place of payment. Again, a call having been made, circumstances might arise, after notice thereof had been given, which required a change in the person to whom payment should be made. If a corporation, it might fail, or, if an individual, he might die. Under such circumstances it is certainly within the power of the company to designate a new agent to whom payment may be made, without requiring the directors to make a new call or assessment. The validity and enforceability of the call cannot, in any proper sense, depend upon the continuance in actual or business life of the person or corporation appointed to receive payment on behalf of the association. The selection of the place of payment, or person to receive the payment, is no more necessary to the valid exercise of the right to make calls upon the stockholders than is the selection of the location of the offices of the company. These are administrative acts proper for the carrying out of the action of the directors, but not essential to the validity thereof. The duty and obligation to pay the assessment is imposed

upon the stockholder after the expiration of the 20 days from the giving of the notice of the action of the directors in making the call. The obligation to pay thus being imposed upon the shareholder, it is his duty to make the payment. The place of payment is but an incident in the performance of the duty of the shareholder. If the company, through its secretary, notifies him that payment may be made at a given place and to a named bank or person, and payment is there made, the shareholder will be protected in so doing. If the defendant should now pay the amounts sued for in this case into the registry of this court, or, upon judgment being rendered, and execution being issued, should pay the amount thereof to the marshal of the court, certainly he would be protected in so doing, and would be held to have performed his obligation of payment to the company. The mere place of payment and the person to whom made is not essential to perfect a payment, so long as it be made to any one who, in that particular, represents the company. When the notices of the making the calls upon the stock of the plaintiff corporation were received by the defendant, notifying him that payment was to be made at the Royal Bank of Scotland, 123 Bishopsgate street, London, he cannot successfully claim that he failed to make payment because he did not know where or to whom payment should be made. He had a right to assume that the place of payment, and the bank at which it was to be made, had been appointed by the directors, and that the action of the secretary was in pursuance of the proper authority. As already said, if he had forwarded the sums called for to the bank named in the notices, he would have fully met his duty, and he could not have been again held liable for the amount of these assessments. Cases might possibly be imagined wherein it might appear that the failure of the stockholder to make payment before suit was due to an uncertainty regarding the proper place of payment, and, prompt payment being tendered upon the suit being brought, a court might be justified in holding the shareholder absolved from liability for interest and costs. But lack of knowledge, even though reasonably existing, as to the proper place of payment, cannot have the effect of releasing the shareholder from liability for a call properly made by the directors. In the case at bar the failure to pay the calls made was not due to any uncertainty touching the proper place of payment. In the letter written by defendant under date of April 24, 1890, to the secretary of the company, he expressly states that, owing to his dissatisfaction with the management of the affairs of the company, he is not disposed to answer any calls made upon the stock, and that, if payment thereof is pressed by suit, he will endeavor to have a receiver appointed to wind up the company.

This letter clearly shows that defendant knew that calls had been made or would be made, and states the grounds of his refusal to pay, which had nothing to do with the mere place of payment. Furthermore, when this action was brought, in effect it was a direction of the company to defendant that he could rightfully pay the amount due on the calls into court or to the attorneys of the com-

pany. His failure to pay, or to make an offer to pay, the sums due after the suit was brought, clearly shows that the question of place of payment, or person to whom payment should be made, had nothing to do with the failure to pay. And I can find nothing in the facts developed in the evidence which would justify a court in holding that the defendant was relieved from liability for the calls made by the directors, by reason of any doubt or uncertainty as to the place or person at which or to whom payment could be made, and I therefore hold that, upon the expiration of 20 days after the giving notice of the several calls made by the directors, the defendant became liable for the amount of the call, and, as it is not claimed that payment thereof has been made in whole or in part, the defendant continues liable to the company for the amounts of the several calls, which, in the aggregate, equal the sum of $6,514.83.

The only other question for decision is whether the defendant is liable for interest upon the amounts thus found to be due upon the calls made. In section 13 of the articles of association it is provided that:

"If before or on the day appointed for payment any member do not pay the amount of any call for which he is liable, he shall be liable to pay interest for the same from the day appointed for the payment thereof to the time of actual payment, at such rate as the directors may from time to time, or at any time before payment of the call, appoint by notice to the defaulter."

Liability for interest is thus made dependent upon two things: (1) The directors must determine or fix the rate; (2) notice of the rate fixed must be given to the shareholder. In the deposition of the secretary of the company it is stated that on the 30th day of July, 1889, a resolution was passed to charge interest at 6 per cent. per annum on all calls in arrear after July 13, 1889. A copy of the resolution is not put in evidence, and the court is not sufficiently advised of its true meaning to be able to hold that it was intended to apply to calls made after the date of the resolution. Furthermore, it does not appear that any notice of the adoption of the resolution was sent to the defendant, and I am therefore of the opinion that the evidence does not show affirmatively that the directors have appointed any rate of interest to be assessed against shareholders in default of the several calls sued for in this action, and for that reason I hold that interest is not recoverable against defendant.

Judgment will therefore be entered in favor of plaintiff for the face of the several calls, without interest, the aggregate thereof being $6,514.83.